940 F.2d 653
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Charles McCLINTON, Defendant-Appellant.
 No. 90-5530.
 United States Court of Appeals, Fourth Circuit.
 Argued April 12, 1991.
Decided July 29, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Salisbury. Frank W. Bullock, Jr., District Judge. (CR-90-17-S)
 Jeanne Schulte Scott, Falls Church, Va., for appellant.
 Michael Francis Joseph, Assistant United States Attorney, Greensboro, N.C., (Argued), for appellee; Robert H. Edmunds, Jr., United States Attorney, Greensboro, N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 Bdfore SPROUSE and NIEMEYER, Circuit Judges, BUTZNER, Senior Circuit Judge.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 David Charles McClinton appeals his conviction under 18 U.S.C. Sec. 2113(a) for the robbery of the First Union National Bank in Concord, North Carolina, on July 20, 1989. At trial, the district judge admitted evidence, as proof of plan or identity, of two other charges of bank robbery and one other charge of attempted bank robbery to which McClinton had pleaded nolo contendere. McClinton now argues that the evidence was not properly admissible under Fed.R.Evid. 404(b), and that it should have been excluded on the grounds of prejudice under Fed.R.Evid. 403. He also argues that the evidence was insufficient to support a conviction. Rejecting McClinton's arguments, we affirm his conviction.
 
 
 2
 * McClinton was indicted for six bank robberies and one attempted bank robbery in or near Charlotte, North Carolina, which lies in the Western District of North Carolina, and one bank robbery in Concord, North Carolina, which lies in the Middle District of North Carolina.[1] All were committed during the period from June 1, 1989, through July 24, 1989. The Concord bank robbery charge was transferred to the Western District pursuant to Fed.R.Crim.P. 20 so that McClinton could enter a plea of guilty to that charge along with pleas of nolo contendere to the charges in the Western District. Although McClinton entered pleas of nolo contendere to the Western District charges, for reasons that are unclear, he refused to enter a guilty plea for the Concord bank robbery. That charge was transferred back to the Middle District for trial, and McClinton was convicted as charged.
 
 
 3
 The Concord bank robbery occurred on July 20, 1989. On that day, a tall black man, wearing a baseball cap and sunglasses, entered the bank and handed a note to a teller, Mary Sellers, which stated, "This is a robbery. Please be quiet. I have a gun." He asked for specific denominations--hundreds, fifties, twenties, and tens. After Sellers gave him $1,710, the robber retrieved the note and fled the bank.
 
 
 4
 Based on a tip, the FBI suspected that McClinton was the bank robber. On July 24, 1989, as FBI agents and Charlotte police officers sat in their vehicles in front of McClinton's residence, a car drove slowly by, with McClinton in the front passenger seat wearing a baseball cap and sunglasses. One of the agents exclaimed, "There he is," after which the car containing McClinton sped away and the agents and officers gave chase. They lost him momentarily, but after receiving another tip, they went to a particular house where they found McClinton hiding in a crawl space, wearing a different shirt than he had been wearing earlier in the car. McClinton was arrested and indicted for the July 20, 1989, bank robbery in Concord, as well as for the six other bank robberies and one attempted bank robbery that occurred in or near Charlotte.
 
 
 5
 At trial, the government called as witnesses three bank tellers from three of the other incidents of bank robbery or attempted bank robbery in the Charlotte area. Each witness testified that a black man walked into her bank, handed her a note,[2] asked for specific denominations of money, and retrieved the note before fleeing. Two of the witnesses testified that the man was wearing a baseball cap and sunglasses. Each witness examined bank photographs from the July 20, 1989, robbery in Concord and identified the black man in the pictures as the man who had robbed or attempted to rob her. Each witness also identified McClinton in the courtroom as the same man.
 
 
 6
 In overruling objections of McClinton to the testimony of the three bank tellers, the judge gave a limiting instruction to the jurors that admonished them to consider the evidence only as it related to "the defendant's plan or identity concerning the robbery in this case."
 
 II
 
 7
 Rule 404(b) of the Federal Rules of Evidence provides that while evidence of other crimes cannot be admitted to establish bad character, it can be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." McClinton argues that the circumstances surrounding the other bank robbery charges are not sufficiently unique as to be proper evidence of a plan or identity under Rule 404(b). We disagree.
 
 
 8
 A district judge's decision to admit evidence pursuant to Rule 404(b) "will not be overturned on appeal unless it was 'arbitrary or irrational.' " United States v. Haney, 914 F.2d 602, 607 (4th Cir.1990). Applying this standard, we find that the district judge did not err by admitting the testimony of the Charlotte bank tellers. Within the short period of a few weeks, McClinton used a singular method for carrying out the bank robberies in a relatively small geographical area. By using a consistently phrased note to announce the robbery, requesting specific denominations of currency in each case, retrieving the note prior to fleeing, and (in at least two instances) wearing a baseball cap and sunglasses, McClinton followed a pattern which was sufficiently distinctive so as to constitute a "signature." Cf. Haney, 914 F.2d at 607 (evidence of another robbery demonstrated a "signature" and was therefore admissible under R. 404(b) where "in each case a pistol was used, the robber warned against the use of dye packs, a getaway car was used, and a police scanner was used to detect trouble"); United States v. Woods, 613 F.2d 629, 635 (6th Cir.), cert. denied, 446 U.S. 920 (1980) ("We find the circumstances of this case reveal a 'signature' on the crimes insofar as each was an armed robbery by robbers wearing ski masks, goggles, and jumpsuits and using a stolen vehicle for a getaway car.").
 
 
 9
 Although notes in bank robberies are common, the similar descriptions of the robber, the oral demands for the same denominations, coupled with the habit of retrieving the note--all of which occurred in a string of robberies in the same area during a short period--justify the court's admitting the evidence. Certainly we cannot conclude that admitting it was arbitrary or irrational.
 
 
 10
 McClinton also contends that the district judge erred by not making a formal ruling under Fed.R.Evid. 403 regarding the prejudicial impact of the testimony of the three Charlotte bank tellers. In support of his contention, McClinton suggests that the district judge appeared to have been misled by the testimony of the three Charlotte tellers because, when denying the motion for judgment of acquittal, he said that there were "several witnesses" who identified McClinton as the person who robbed the bank in Concord on July 20, 1989, when in fact only Sellers made an in-court identification of McClinton as that person. McClinton argues that if the district judge was misled by the Rule 404(b) evidence, it is reasonable to assume that the jury was likewise misled.
 
 
 11
 The apparent misstatement by the district judge, however, does not signify that the jurors misapprehended the evidence, or that they misunderstood or consciously ignored the district judge's limiting instructions. In view of the fact that the jury was warned on more than one occasion to consider the evidence only as it related to a plan or identity, and based on the record as whole, we find that the probative value of the testimony of the Charlotte bank tellers outweighed any unfair prejudicial effect created by its admission. A formal finding in this regard by the district judge under Fed.R.Evid. 403 was not necessary. See United States v. Lewis, 780 F.2d 1140, 1142 (4th Cir.1986) ("As long as the record as a whole indicates appropriate judicial weighing, we will not reverse for a failure to recite mechanically the appropriate balancing test [between probative value and prejudicial effect].").
 
 III
 
 12
 Finally, McClinton contends that the evidence of conviction was "insufficient" and that the district court erred in denying his motion for judgment of acquittal. A motion of acquittal must be denied if there is substantial evidence in the record, construed in the light most favorable to the government, to support a jury's finding that the defendant is guilty beyond a reasonable doubt. United States v. Stockton, 788 F.2d 210, 218 (4th Cir.), cert. denied, 479 U.S. 840 (1986).
 
 
 13
 In this case, the bank teller, Sellers, identified McClinton as the robber prior to trial in a lineup and during the trial, both in the courtroom and in pictures. Moreover, the Charlotte bank tellers identified McClinton from photographs and in the courtroom as the man who had robbed, or attempted to rob them. In the context of the entire record there is ample evidence, when viewed in the light most favorable to the government, to support McClinton's conviction, and therefore we affirm his conviction.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Concord is approximately 20-25 miles from Charlotte
 
 
 [2]
 In the robbery that occurred at the First Citizens Bank in Charlotte on June 23, 1989, the note simply stated, "This is a robbery." The note used at the First Union National Bank in Charlotte on June 30, 1989 said, "This is a robbery and I have a gun." The note used at the NCNB bank in Charlotte on July 14, 1989 said, "This is a robbery. I have a gun."